UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTONIEL PENNINGS,<br><br><div align="right">Petitioner,</div><br>v.<br><br>SCOTT KERNAN,<br><br><div align="right">Respondent.</div> | Case No.:  15cv1836 CAB (BGS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Otoniel Pennings ("Petitioner" or "Pennings") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner asserts four grounds for habeas relief all based on the denial of continuances of his criminal trial: (1) Sixth Amendment right to counsel; (2) Due Process based on lack of time to prepare; (3) Due Process based on denial of continuance motions; and (4) Due Process by Court of Appeal for assumptions.[1] (Pet. [ECF No. 1].)  On the day set for trial, Petitioner sought to represent himself after his request for new counsel was denied.  The trial court granted his request, appointed a runner and legal investigator, inquired about the amount of discovery to be provided to Petitioner, and continued the trial for two days.  On the continued trial date and the following day, Petitioner sought to continue his trial

---

[1] Case No. SCD 240171 in the Superior Court of San Diego County

numerous times.  His requests were denied.   Respondent filed an Answer and Petitioner filed a Traverse. [ECF Nos. 8, 16.]

The Court submits this Report and Recommendation to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  After consideration of the Petition, Respondent's Answer, Petitioner's Traverse, and the Lodgments, the Court recommends Pennings' Petition be **DENIED**.

## I.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).[2]  Accordingly, the following facts are taken from the California Court of Appeal opinion:

> On the morning of April 4, 2012, Pennings jumped a fence in the back of a house located on Mission Village Drive and entered the home through a sliding glass door at the back of the house. A 14–year–old girl awoke when the sliding door in her bedroom opened. She saw Pennings open the door, push the curtains aside and walk in. At first, she wondered if it was her brother, but soon realized she did not recognize the man. Pennings walked around her bed and grabbed her phone from where it was charging on the nightstand.
>
> She told him to give her phone back. Pennings asked repeatedly, "Where are the keys?" He returned the phone to her, but told her, "Don't call anyone." He did not apologize or indicate he made a mistake in entering the home. Pennings left her bedroom and went down the hall. He went to a key rack located next to the front door of the house and grabbed keys off the rack. He tried to open the front door, which was locked.

---

[2] Petitioner's challenges to the Court of Appeal's conclusions are addressed below, but concern the proceedings before the trial court leading up to his trial, rather than the evidence submitted at trial.

The girl woke up her father, who was sleeping on the couch. The father saw Pennings standing at the front door reaching for a pair of keys on the rack with one hand and reaching for the doorknob with his other hand. When the father realized he had never seen Pennings before and he did not belong in the home, the father ran toward Pennings and grabbed him. The father hit and pushed Pennings toward the wall so Pennings could not open the door. In the meantime, the girl called the police.

While the father and Pennings struggled, Pennings said, "Let me go. Let me go. I don't want to get arrested." At no point did Pennings indicate this was a mistake or that he thought he was in someone else's house. Instead, he repeated, "Let me go. I don't want to go to jail."

The girl's brother awoke from the noise, came out of his room and ran to help. Pennings stopped struggling when the brother threatened him with a baseball bat. The father and the brother pinned Pennings to the floor and held him there until the police arrived. While they waited for the police, Pennings did not respond to any questions about whether Pennings lived in the neighborhood.

Pennings testified he was trying to go to a friend's house. He stated he thought he was entering a house that belonged to people he knew. He claimed he did not realize he was in the wrong house until he picked up the girl's phone. He stated it did not occur to him to leave through the back door. Pennings said he did not intend to steal anything when he entered the house and he denied grabbing keys.

Pennings admitted on cross-examination that his friend, Chris, who lives on a neighboring street, does not live on a corner and there is no access through a fence from a side street. However, Pennings then testified he was not actually going to Chris's house, but rather to John's house to "buy some time" and to make a telephone call until he could go back to Chris's house to get things he had left there. Pennings admitted he never told the residents he made a mistake and was in the wrong house. He first mentioned this story while being questioned by a police officer at the station.

(Lodgment No. 5 at 6-8.)  Petitioner was found guilty of residential burglary with another person, other than an accomplice, present in the residence (Cal. Penal Code §§ 459/460, 667.5(c)(21).  (Lodgment No. 1 at 114-15.)  The court found Petitioner had served two prior prison terms and sentenced him to six years in prison. (*Id.* at 8.)

## II.   PROCEDURAL BACKGROUND

The Court of Appeal found the following as to the trial proceedings leading up to Petitioner's trial.

### A.   New Counsel[3]

On Monday July 30, 2012, the day Petitioner was scheduled to go to trial, Petitioner requested appointment of new counsel.  (*Id.* at 2.)  He had been represented by counsel for at least three months, and this was the first time Petitioner alerted the court that he wanted new counsel.  (*Id.* at 10.)

The Court of Appeal found that although Petitioner mentioned wanting witnesses questioned, at the time his counsel was relieved, he had not provided his counsel with the name of the individual's house he claimed he was intending to visit when he entered the residence he was charged with burglarizing — the basis for his defense that he lacked intent.  (*Id.* at 2.)  The Court of Appeal also found that his counsel explained to the trial court that she had not interviewed the witnesses in the house, the only other witnesses Petitioner had mentioned wanting interviewed, because those individuals had not indicated to police that Petitioner was violent and would only testify he was in the house, which he did not dispute.  (*Id.* at 3.)  The court denied his request for new counsel. (*Id.*)

### B.   Representing Himself

Petitioner then sought to represent himself.  (*Id.*)  The court cautioned him not to and asked him "if he recognized he was going to trial 'in the next few days, next week?'" (*Id.*)  Petitioner said he needed evidence to go to trial. (*Id.*)  After going through the *Faretta/Lopez*[4] waiver form, the court relieved his counsel.[5]  (*Id.* at 3-4.)

---

[3] In the record, the request for new counsel is referred to as a *Marsden* motion for *People v. Marsden*, 2 Cal. 3d 118 (1970).

[4] As the Court of Appeal's decision explains, a *Faretta/Lopez* waiver refers to *People v. Lopez*, 71 Cal App. 3d 568, 571 (1977) and *Faretta v. California*, 422 U.S. 806 (1975) — cases addressing a defendant's waiver of the right to counsel and to represent themselves.

[5] In addition to numerous other warnings, Petitioner acknowledges in the form that as an incarcerated individual, contacting witnesses and investigating his case may be difficult,

## C.     Continuances

Petitioner had already received one 30-day continuance before this scheduled trial date when he was represented by counsel.  (*Id.* at 10.)  After allowing Petitioner to proceed without counsel, the court declined to send the case to trial that day as scheduled and as suggested by the prosecutor, noting that Petitioner needed a runner and an investigator.  (*Id.* at 4.)  Then Petitioner sought a continuance based on needing discovery.  (*Id.* at 4.)  The Court continued the matter for two days, but noted that he should be able to go to trial that afternoon based on the amount of pages in the discovery other than his own criminal history.  (*Id.* at 4.)

Following the continuance,[6] Petitioner next appeared before the court on Wednesday August 1, 2012.  (*Id.* at 4.)  Petitioner acknowledged the court had previously advised him to be ready, he had received the discovery from the prosecutor the day before, and he had read the discovery. (*Id.* at 4.)  However, he indicated he wanted more time before trial to file a motion under § 995 based on lack of intent,[7] wanted to go to the law library, needed materials to file a motion, and wanted an investigator to "make a few questions to possible other witnesses for my defense," but would not identify who those witnesses were in the prosecutor's presence.  (*Id.* at 4-5.)  The court denied a continuance and sent the case to the trial department.[8]  (*Id.* at 5.)

---

his ability to research and prepare motions limited, and that he will have no more privileges than anyone representing themselves.  He also acknowledges he may not receive all the assistance he wants or needs from an investigator or runner.  (Lodgment No. 1A at 2-3.)

[6] Petitioner disputes whether he was granted a continuance or the matter was trailed for two day, but does not dispute that two days passed before he was before the court again on August 1, 2012.

[7] California Penal Code § 995 allows a defendant to move the court to set aside an indictment or information if the defendant has been indicted or committed without reasonable or probable cause.

[8] Petitioner argues that his request for a continuance was not "officially reviewed and was not ruled on," but the transcript reflects that following the two-day continuance, Petitioner appeared before the court on August 1, 2012, the court inquired about his

Before the trial judge, Petitioner again requested a continuance based on wanting to file a motion and have an investigator interview witnesses. (*Id.* at 5.) Petitioner acknowledged investigator services had been ordered on July 30, 2012 and receipt of paperwork on July 31, 2012, but he had not yet filed the paperwork to get investigator services. (*Id.* at 5.) The court heard argument from Petitioner and the prosecutor and denied the continuance. (*Id.* at 5.)

Later in the proceedings that day, when Petitioner identified a possible witness in discussing the witness list and acknowledged needing to get a statement, the court explained any statement obtained would need to be provided to the prosecutor. (*Id.* at 5.) When asked, Petitioner indicated he did not have any motions other than the continuance request. (*Id.* at 5-6.) The request was again denied. (*Id.* at 6.) Petitioner then requested a continuance to get clothes to wear during trial. (*Id.* at 6.) The court again denied a continuance, but signed a "dress out order." (*Id.* at 6.)

Although his requests for continuances had been denied, his trial did not commence until the next day. (*Id.* at 12.) On August 2, 2012, Petitioner sought another continuance based on not being able to use the law library to research new authority he had just been provided by the prosecutor. (*Id.* at 12.) The request was denied. (*Id.* at 12.) Petitioner was provided with copies of the new authority that morning and the next morning he distinguished the cases in prevailing on the prosecutor's motion to introduce Petitioner's prior criminal convictions in its case-in-chief to prove intent. (*Id.* at 12.) On the afternoon of August 2, 2012, the jury was empaneled, however, Petitioner was not required to present his defense until the afternoon of August 3, 2012. (*Id.* at 12-13.)

_____

readiness for trial, Petitioner articulated his reasons for needing more time, and the court stated "your motion for a continuance is denied" before assigning the case to a department for trial. (Lodgment 2, Vol. 2, at 23.) The judge did indicate Petitioner could raise these issues again before the trial department judge.

15cv1836 CAB (BGS)

On August 6, 2012, as noted above, Petitioner was found guilty of residential burglary with another person, other than an accomplice, present in the residence. He was then sentenced to six years in prison.

On appeal, Petitioner challenged the denial of a sufficient continuance of his criminal trial. (Lodgment No. 3.) The California Court of Appeal affirmed the judgment in a reasoned decision. (Lodgment No. 5.) Petitioner then sought review by the California Supreme Court, which was summarily denied. (Lodgment Nos. 6-7.)[9]

## III.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applicable to this Petition, a habeas petition will not be granted unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

---

[9] Respondent submitted other lodgments related to proceedings Petitioner initiated before the state courts concerning conditions of his confinement at George Bailey Detention Facility in 2014 when he was being held as a material witness. Although Petitioner titled those filings as "habeas," they do not challenge his August 6, 2012 conviction or sentence. (Lodgments 8-13.) The Court also notes that Lodgment No. 2 at 1 indicates that a sealed portion of the transcripts, Petitioner's *Marsden* hearing, is included in Volume No. 1A. It is not. Lodgment 1A only includes Petitioner's *Faretta/Lopez* waiver and the government's trial brief. The transcript commences with the court's reiteration that he thinks Petitioner's decision to proceed without counsel is unwise, and the court addressing Petitioner's initial request for additional time on July 30, 2012, which he received. (Lodgment No. 2 at 13-16.) Petitioner does not dispute that he sought new counsel and then to represent himself when that request was denied or that he completed the *Faretta/Lopez* waiver, which is included.

"The 'contrary to' and 'unreasonable application of' clauses in § 2254(d)(1) are distinct and have separate meanings." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73-75 (2003)). "Under the 'contrary to' clause of § 2254(d)(1), a federal court may grant relief only when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Loher v. Thomas*, 825 F.3d 1103, 1111 (9th Cir. 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

"Under the 'unreasonable application' clause of § 2254(d)(1), 'a state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoners case.'" *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014). Unreasonable application is "not merely wrong" or "even clear error." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). It must be "objectively unreasonable." *Id.* "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 1377 (quoting *Richter*, 562 U.S. at 103). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *Taylor*, 529 U.S. at 411.

Under § 2254(d)(2) "a petitioner may challenge the substance of the state court's finding and attempt to show that those findings were not supported by substantial evidence" or "challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). "Regardless of the type of challenge, 'the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that

determination was unreasonable — a substantially higher threshold." *Id.* "[W]hen the challenge is to the state courts procedure, . . . [the court] must be satisfied that *any* appellate court to whom the defect in the state court's fact-finding process is pointed out would be unreasonable in holding that the state courts fact-finding process was adequate.'" *Id.* at 1146-47; *see also Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). (the federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.").

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013). Here, the California Court of Appeal's February 27, 2014 decision is the last reasoned decision.

## IV.   DISCUSSION

### A.   California Court of Appeal's Decision

The California Court of Appeal found the two-day continuance Petitioner received on July 30, 2012 after being permitted to proceed without counsel was reasonable and the denial of further continuances on August 1, 2012 and August 2, 2012 were not an abuse of discretion.

The court considered that Petitioner had appointed counsel for three months prior, had previously obtained a 30-day continuance of his trial, and that he waited until the day of trial to request appointment of new counsel — the denial of which prompted the request to proceed without counsel. The court also considered the circumstances presented to the trial court at the time Petitioner was denied a further continuance on August 1, 2012, including, but not limited to, the prior warning to be prepared to go to trial, the minimal discovery Petitioner was required to review, Petitioner's claims concerning potential unidentified witnesses, and whether witnesses even existed that could present material evidence in his defense. The court acknowledged Petitioner was

entitled to a reasonable continuance after the trial court allowed him to proceed without counsel and found the two-day continuance he received was a reasonable continuance under the circumstances.  Based on the information provided to the trial court at the time further requests were sought, the court found the denial of additional continuances was not an abuse of the trial court's discretion.

## B.    Ground One

In Ground One, Petitioner argues the "trial courts abused their judicial discretion by granting a 'Faretta' motion on the 'eve of trial,' but denied any reasonable continuances even though it was evident Petitioner needed more time to prepare a defense." (Traverse at ¶ 6.)  Petitioner claims that because he was not given the continuances he requested to prepare a meaningful defense, he was denied his Sixth Amendment right to represent himself. (Traverse at 1.)  He argues that as his own counsel, he needed more time to utilize an investigator to collect potential witness statements, conduct legal research and file a § 995 motion, and generally did not have sufficient time to prepare for the in limine hearing or for trial.  (Pet. at 6; Traverse at 1-4.)

To the extent Petitioner is arguing that the trial court should have denied or revoked his right to represent himself at some point during the proceedings and/or he was denied effective assistance of counsel by being allowed to represent himself, these arguments have no merit.[10]  Petitioner's right to counsel was not violated by being allowed to proceed without counsel.  Petitioner does not dispute that he "unequivocally exercised his right to self-representation under *Faretta*." (Traverse at 1.)  He was advised

---

[10] To the extent Petitioner is arguing that the denial of continuances violated his Sixth Amendment right to counsel, the issue is analyzed below in Grounds Two and Three because the standard is the same as that applicable to Petitioner's due process claims. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (analyzing denial of a continuance as a due process claim) and finding "[b]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel.").

by the court that he should not represent himself.  (Lodgment 2, Vol. 1 at 13 (after confirming his completion of the form, "you understand that, in this court's opinion, you're not doing the smart thing.  You should let a lawyer represent you.  I'm not say you can't do it.  I'm saying that it's just not the smart thing.").  Petitioner completed a comprehensive form waiving his right to counsel before the court and Petitioner's unequivocal request to represent himself was granted.  (Lodgment 1A at 1-3 [*Faretta/Lopez* waiver]; Lodgment 2, Vol. 1 at 13.)  There is also nothing in the record to indicate that at any point prior to his appeal Petitioner sought to be represented by counsel or otherwise indicated he did not want to proceed representing himself.  Petitioner does not even indicate now that he wanted to stop representing himself at any point prior to appeal.  Under these circumstances, the court could not force Petitioner to have counsel.  "It is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage.  And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'"  *Faretta v. California*, 422 U.S. 806, 834 (quoting Illinois v. Allen, 397 U.S. 337, 850-51 (1970)); *see also U.S. v. Flewitt*, 874 F.2d 669, 674, 676 (9th Cir. 1989) (reversing lower court for terminating defendants' pro se status for conduct that fell short of "uncontrollable and disruptive behavior in the courtroom.")  Petitioner's Sixth Amendment right was not violated by being allowed to proceed without counsel after he unequivocally requested to represent himself.

Further, Petitioner was not denied effective assistance of counsel by his own representation of himself.  "[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  *Id.* n.46; *see also Flewitt*, 874 F.2d at 674 (discussing Faretta, 422 U.S. at 834 n. 46 and finding "a defendant cannot claim ineffective assistance of counsel flowing from his failure to follow the rules of procedure or from his misinterpretation of the substantive law.  If he

chooses to defend himself, he must be content with the quality of that defense.")
Petitioner's Sixth Amendment rights were not violated in being allowed to represent himself.

### C.   Ground Two and Three

In Grounds Two and Three, Petitioner argues that his 14th Amendment Due Process rights were violated because he needed more time to utilize an investigator to collect potential witness statements, conduct legal research and file a § 995 motion, and that he generally did not have sufficient time to prepare for the in limine hearing or for trial.  (Pet. at 6; Traverse at 1-4.).[11]  (Pet. at 6-8; Traverse at 1-9.)  Petitioner additionally argues throughout his Petition and Traverse that the trial judge failed to consider California Penal Code § 1059 in denying his request for a continuance.  (Pet. at 6-8; Traverse at 3-7.)

Petitioner's arguments largely focus on his speculation concerning possible witnesses he might have been able to locate with more time and how those witnesses' testimony, assuming they would have testified, might have altered the outcome of his trial.  He speculates that these witnesses that might have been located and might have testified that "he was a drug addict who was homeless and only avoided sleeping on the streets because of his friends allowing him to stay with him" and that "his use of methenfetamine [sic] could cause delusions and his friend (Christopher Grissett) lived on the next street and allows him to jump the fence and enter his house through a sliding glass door in the backyard."  (Traverse at 9; Pet. at 8.)  He argues that this would have allowed him to put on the defense he did — he entered the house by mistake and lacked

---

[11] The Court considers these grounds together because his arguments and the applicable standard are the same.  As noted above, Petitioner's argument that the denial of continuances violated his Sixth Amendment right to counsel is subject to the same standard as Grounds Two and Three and is analyzed here.

intent to steal[12] —without having to testify to it himself and have his prior criminal history presented to the jury.  Petitioner also generally argues that he needed more time to access the law library and to prepare and file motions and that the trial court did not sufficiently consider his need for continuances, particularly the judge the case was sent to for trial because he deferred to the earlier judge's denial of a continuance.

### 1.    Respondent's Argument

Respondent relies heavily on the Court of Appeal's decision.  Respondent generally argues that whether to grant a continuance is committed to the trial court's discretion, the Court of Appeal's rejection of Petitioner's claims concerning the continuance was reasonable, and that Petitioner has not shown the trial court's denial of a continuance violated due process.

### 2.    Analysis

#### a)    Denial of Continuance

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *Hernandez v. Holland*, 750 F.3d 843, 858 (9th Cir. 2014).  "The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  *Ungar*, 376 U.S. at 589.  "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."  *Id*.  "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar*, 376 U.S. at 589).[13]  "Under both federal and state law, the

---

[12] California Penal Code § 459 requires the defendant enter "with intent to commit grand or petit larceny or any felony."

[13] Although *Morris v. Slappy* articulated this standard in the context of the Sixth Amendment right to counsel, the same standard applies when the denial of a continuance

decision to grant or deny a motion for a continuance is within the trial court's discretion." *Harris v. Henry*, 2007 WL 1170925, *2 (9th Cir. 2007) (citing *Ungar*, 376 U.S. at 589 and *People v. Howard*, 1 Cal. 4th 1132 (1992)).

The Court of Appeal recognized "there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process" and acknowledged it depends on the circumstances of the case at the time it is considered by the trial court when denied.[14]  (Lodgment 5 at 9.)  In this respect, Petitioner has not shown the Court of Appeal's decision that was contrary to clearly established federal law under § 2254(d)(1).

Petitioner relies heavily on decisions from federal courts of appeal addressing the denial of continuances in federal criminal cases.  Although he acknowledges in his Traverse there are no mechanical tests for determining when the denial of a continuance constitutes a constitutional violation, he argues the Court should apply a four-part test articulated in *U.S. v. Flynt*, 756 F.2d 1352 (9th Cir. 1985).  (Traverse at 7-9.)[15]  However, *Flynt* is a direct appeal in a criminal case originating in federal district court.  *Flynt*, 756 F.2d at 1354.  It is not a habeas case subject to the deferential review required by § 2254.

---

is presented as a violation of due process under the Fourteenth Amendment.  *See Godoy v. Spearman*, 834 F.3d 1078, 1092 (9th Cir. 2016) (petition for panel rehearing pending on a different issue) (addressing due process challenge and explaining that "[t]rial courts have broad discretion in determining whether continuances should be granted, and 'only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' is constitutionally impermissible." (quoting *Morris*, 461 U.S. at 11-12)).

[14] Although the state court is not required to cite or even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them," *Early*, 537 U.S. at 8, the court applied and cited the correct standard. The Court of Appeal cites a California Supreme Court decision, *People v. D'Arcy*, 48 Cal. 4th 257, 287-288 (2010), but the standard articulated in *D'Arcy* is drawn from and cites *Ungar*, 376 U.S. at 589.

[15] Although the Court rejects application of this test for the reasons explained, the Court has considered Petitioner's arguments as to these factors in assessing whether the denial of a continuance was constitutionally impermissible under the standards articulated by Supreme Court precedent.

14

*Id.*  Additionally, assuming the Court could use a test applicable to direct appeals in a habeas proceeding,[16] recent Supreme Court authority makes clear that Ninth Circuit precedent may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced" under § 2254.  *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).  "Instead, the correct question is whether the California Court of Appeal reasonably concluded that the trial court did not abuse its broad discretion when it denied [petitioner's] continuance."  *Godoy*, 834 F.3d at 1093.

Petitioner has not shown the Court of Appeal's decision involved an unreasonable application of clearly established federal law under the second prong of § 2254(d)(1) because its conclusion that the trial court did not abuse its discretion in denying Petitioner's requests for continuances was reasonable.  The Court of Appeal's decision was reasonable because it considered the information before the trial court at the time it denied Petitioner's requests for continuances and identified numerous reasons why the denial of additional continuances was not an abuse of discretion.  Specifically, the Court of Appeal found that Petitioner had received a two-day continuance of his trial after being allowed to proceed without counsel.  (Lodgment 5 at 10.)  Petitioner acknowledged prior to trial that he had received and read the only discovery.  (*Id.* at 11.)  The trial court had appointed a runner and investigator and the judge in the trial department confirmed the appointment and that Petitioner had the paperwork no later than July 31, 2012 — two days before trial commenced and three days before Petitioner had to put on his defense.  (*Id.* at 12-13.)  The Court of Appeal considered his claims concerning witnesses and

---

[16] In addition to *Ungar's* rejection of mechanical tests, the Ninth Circuit itself has recently and specifically rejected consideration of the four-part test Petitioner relies.  *Godoy*, 834 F.3d at 1093.  The petitioner's opening brief in *Godoy* relied on a different case for the same four-part test.  The panel found "[t]he Supreme Court's command in *Ungar,* that a denial of a continuance must be assessed in light of 'circumstances present in every case,' cannot be refined by Ninth Circuit precedent into a specific review that looks only at certain factors."  *Id.*

found that despite identifying one possible witness and alleging he could identify an address near the victim's house, there was no indication Petitioner sent an investigator to that address or to contact the possible witness.  (*Id.* at 13.)  The Court of Appeal also noted that the trial court was aware that Petitioner had not been able to identify potential witnesses to his prior counsel for three months and could not provide the address of the person he claimed he was visiting.  (*Id.* at 11.)  The court found the trial court issued a dress out order when Petitioner sought a continuance to obtain clothes for trial, despite noting it was Petitioner's responsibility.  (*Id.*)  And, as to Petitioner's request for a continuance to access the law library to research new authority provided by the prosecutor in support of a motion, the Court of Appeal noted that Petitioner had received the cases that morning and successfully distinguished the authority in defeating the prosecutor's motion. [17]  (*Id.*)

Because the Court of Appeal's conclusions are reasonable, the Court cannot find the Court of Appeal unreasonably applied Supreme Court precedent under § 2254(d)(1)'s second prong.  The Court of Appeal's decision would have to be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Donald,* 135 S. Ct. at 1376.  That is not the case here.  The trial court considered the relevant circumstances, including the trial schedule, Petitioner recently being allowed to proceed without counsel, prior continuances, discovery recently provided to Petitioner, the breadth of the discovery, Petitioner's requests to file further motions, and Petitioner's speculation about having an investigator contact witnesses to obtain statements from witnesses that might ultimately testify.  Additionally, the record reflects that both trial court judges considered

---

[17] As discussed below, Petitioner suffered no prejudice in denial of access to the law library.  Additionally, the Court also notes that denial of access to the law library is not a basis for habeas relief.  *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) ("*Faretta* does not, as § 2254(d)(1) requires, 'clearly establish' the law library access right.  In fact, *Faretta* says nothing about any specific legal aid that the State owes a pro se criminal defendant.)

Petitioner's arguments in favor of a continuance, inquired further about those reasons, and considered them in denying his requests for continuances. That the judge the case was sent to for trial referenced the prior denial in his consideration of Petitioner's arguments for a continuance does not mean, as Petitioner suggests, he did not consider Petitioner's arguments or his decision was based exclusively on the earlier decision. Although it was a very short time to prepare, the Court of Appeal reasonably concluded that the denials of Petitioner's requests for continuances were not an abuse of discretion.

### (1)   Prejudice

Although the Court need not reach the issue, even if the denials of continuances had been an abuse of discretion, Petitioner has not demonstrated actual prejudice. "[E]ven if a trial court abuses its discretion in denying a continuance, a habeas petitioner must show actual prejudice to obtain relief." *Godoy*, 834 F.3d at 1092-93 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (finding courts considering claims under § 2254 "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*."); *see also Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997).

Petitioner speculates about potential witnesses he might have located with an investigator and that these witnesses might have been willing to testify that he sometimes snuck into friends' homes.[18] This in turn might have meant he would not have needed to

---

[18] As noted above, and explained by the Court of Appeal, the trial court appointed an investigator on July 30, 2012 and Petitioner had the paperwork for an investigator no later than July 31, 2012. (Lodgment 2, Vol. 1 at 15 and Vol. 3 and 26.) The trial court confirmed it on August 1, 2012, the day before trial commenced. (*Id.*; Lodgment 2, Vol. 3 at 26, 65.) Petitioner knew he had to file the paperwork. (Lodgment 2, Vol. 3 at 26 6-14 ("I just got the papers yesterday, and to get an investigator through O.A.C., [Office of Advisory Counsel], I would have to file the paperwork.) But, as the Court of Appeal explained, Petitioner did not utilize an investigator, even to investigate the only possible witness identified to the court or as to an address of a house near the house he entered.

testify that he was intending to sneak into a friend's house that day and his priors[19] would not have been before the jury. He argues the priors were the basis for the jury's verdict. This is too speculative to establish prejudice, particularly given Petitioner did not dispute that he jumped a fence and entered the home through a back sliding glass door and after awakening a sleeping 14 year old, took her phone, returned it, told her not to call anyone, and proceeded into (rather than out of) the house before he was restrained by two other residents of the house until police arrived. And, as noted above, there was also testimony that he was demanding keys as he proceeded into the house and that he was grabbing keys from a key rack before he was restrained by two other residents of the home until police arrived. Even if the Court accepted Petitioner's speculation that these witnesses would have testified that in the past he snuck into friends' homes that would not have helped him with the testimony that he was demanding and reaching for keys. Those witnesses, undisputedly not there that day, would not have been able to explain why Petitioner was seeking the residents' keys. Petitioner would still have had to testify to dispute this testimony, thereby allowing his priors to come in. In this respect, even if these witnesses' existence and willingness to testify as Petitioner speculates were more than speculation, their absence was not prejudicial to Petitioner given the evidence against him at trial.

Additionally, Petitioner argues generally that he needed more time to access the law library to prepare motions he wanted to file, but he has not shown how he was prejudiced by not being able to file motions. For example, he indicates he wanted for file a late § 995 motion, but does not explain what it would have been based on. Given the evidence noted above, it would highly unlikely such a motion would have been granted.

---

(Lodgment 5 at 13.) Petitioner did not have to put on his defense until two days later, but there is no indication he even filed paperwork for an investigator.

[19] Petitioner's convictions for possession of a stolen vehicle; burglary; and possession of marijuana for sale were presented to the jury on cross-examination. (Lodgment No.2, Vol. 4 at 225-26.)

Considering all of Petitioner's arguments concerning prejudice, even if the Court found the denial of continuances was unreasoning and arbitrary, the Court cannot find it "ha[d] a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *Fry*, 551 U.S. at 121.

<div align="center">

**b)**     **§ 2254(d)(2)**

</div>

Petitioner does not make a particular challenge under grounds one, two or three as to § 2254(d)(2), however, he argues in his Traverse that the Court of Appeal incorrectly found he received a two-day continuance, as opposed to the matter being trailed for two days. (Traverse at 2.) To the extent this is a challenge to the Court of Appeal's determination of the facts under § 2254(d)(2), Petitioner is not entitled to relief. Petition sought a continuance on Monday July 30, 2012. (Lodgment No. 2, Vol. 1 at 14 ("I'd need a continuance because I don't have all my paperwork – I don't have the discovery.").) The court advised the prosecutor to get him an unredacted copy, as opposed to the redacted version he had already received, of the discovery, told Petitioner he should be able to read it and be ready for trial by that afternoon, but gave him until Wednesday. (*Id.* at 14-15.) The Court cannot find the Court of Appeal's characterization of this as a continuance was objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing § 2254(d)(2) and explaining that "a decision adjudicated on the merits in state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."); *see also Hibbler*, 693 F.3d at 1146.

For the foregoing reasons, it is recommended relief on grounds one, two, and three be **DENIED** because the state court's resolution of these claims was not contrary to or an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the record presented. 28 U.S.C. § 2254(d).

## D.    Ground Four

Petitioner appears to argue that the Court of Appeal erred in agreeing with Respondent's argument on appeal that he was seeking continuances for purposes of delay

<div align="center">

19

</div>

because that was not the basis for the trial court's denial of a continuance.  (Pet. at 8; Traverse at 2, 10-11.)  It appears this challenge is to the Court of Appeal's determination of the facts under § 2254(d)(2).[20]  The Court of Appeal decision states "[t]he record in this case shows the court properly exercised its discretion to deny Penning's continuance requests, which appeared to be for purposes of delay."  (*Id.* at 13.)

The Court finds that the Court of Appeal's decision finding the trial court did not abuse its discretion in denying Petition's requests for continuances was not based on a finding that Petitioner sought the continuances for purposes of delay.  The court had, to the contrary, concluded that the trial court did not abuse its discretion in denying Petitioner continuances for all the many reasons noted above, when it included this statement.  (*See* IV.B.3.a).)  The Court of Appeal found the two-day continuance that Petitioner received, following a grant of his motion for self-representation, was reasonable.  (Lodgment 5 at 8-10.)  The court considered the circumstances of this case, the status of the proceedings, the information before the trial court, and Petitioner's arguments for continuances, each time he sought and was denied a continuance, in finding the trial court did not abuse its discretion.  (*Id.* at 10-13.)  The court's inclusion of the language regarding delay appears to be a reasonable inference from the circumstances of the case, but was not the basis for the Court of Appeal's opinion finding no abuse of discretion.

To the extent Petitioner is arguing the trial court record does not support this opinion regarding the appearance of delay, the Court disagrees.  The Court of Appeal could reasonably conclude from the record before it that the requests for continuances were sought for purposes of delay, even without the trial court explicitly stating delay

---

[20] To the extent these challenges are being asserted under § 2254(d)(1), Petitioner is not entitled to relief.  As explained above, the Court of Appeal's decision was not contrary to or an unreasonable application of clearly established federal law.  And the trial court's denial of a continuance was not unreasoning or arbitrary considering all the circumstances at the time the requests were made.

was the basis for denying additional continuances.  To the extent the court's opinion about delay is based on factual determinations, such were not unreasonable.  *Hibbler*, 693 F.3d at 1146-47 (addressing § 2254(d)(2) and explaining that "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.").  Specifically, the Petitioner sought new counsel on the day of trial. (Lodgment No. 2, Vol. 1 at 1.)  When that request was denied, he sought to represent himself.  (*Id.* at 13.)  The trial court gave him a continuance, ordered unredacted discovery be provided, and appointed a runner and investigator.  (*Id.* at 13-16.)  Petitioner did not avail himself of those despite having the paperwork to do so no later than July 31, 2012.  (Lodgment 2, Vol. 1 at 15-16; Lodgment 2, Vol. 3 at 26.)  Further, Petitioner's counsel proffered that he had never identified any of these phantom witnesses.  And, the only specific witness Petitioner ever identified before the trial court does not appear to have ever been contacted by any defense investigator appointed to Petitioner.  From these facts alone, the Court of Appeal could reasonably conclude that Petitioner's requests for continuances appeared to be for purposes of delay.  However, it is clear the Court of Appeal's conclusion that the trial court did not abuse its discretion was based on other factual determinations, not delay. (*See* IV.C.2.)

For the foregoing reasons, it is recommended relief on Ground Four be **DENIED** because the state court's resolution was not an unreasonable determination of the facts from the record presented.  28 U.S.C. § 2254(d)(2).

**E.    Perceived Errors of State Law**

Petitioner argues throughout his Petition and Traverse and through numerous grounds that the trial court's denials of continuances violated California Penal Code §§ 1049 and 1050(a).  The Court has considered his arguments as to these points in considering whether the denial of continuances constituted a constitutional violation above, but addresses the arguments specific to these provisions as follows.  Section 1049 requires a defendant be given a minimum of five days to prepare for trial after entering a

plea.[21]  Section 1050(a) explains why the State of California has found continuances in criminal cases have adverse consequences.  It also discourages continuances in criminal cases by giving precedence to criminal matters over civil.  The remainder of § 1050 outlines the requirements and procedures for requesting and obtaining a continuance.

Petitioner's claims of error in the application of §§ 1049 and 1050 present only issues of state law not cognizable on federal habeas review.  Federal habeas writs may not issue on the basis of a perceived error of a state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  A petitioner cannot transform a state law issue into a federal one by labeling it a due process violation. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.1996); *Little v. Crawford*, 449 F.3d 1075, 1083 n. 6 (9th Cir. 2006) (Courts "cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.")  Petitioner is not entitled to federal habeas relief based on an alleged error in applying §§ 1049 or 1050.

## F.    Evidentiary Hearing

In his Traverse, Petitioner argues for the first time that he is entitled to an evidentiary hearing because the state court did not reasonably determine the facts from

---

[21] Although on its face the statute states simply "after his plea, the defendant is entitled to at least five days to prepare for trial" and would appear completely inapplicable here, there are California decisions suggesting that under § 1049, a defendant may, under certain circumstances, be entitled to five days to prepare for trial after being allowed to proceed without counsel.  The Court notes only the particular circumstances, including the timeliness of the motion to proceed without counsel, *i.e.* not on the day set for trial, and other circumstances are considered in evaluating whether a continuance should be granted.  *See People v. Moore*, 2003 WL 22463176, at *5 (Cal. App. 2003) ("This provision, [§ 1049], has been interpreted to mean that once a defendant is granter pro per status he is entitled to at least five days in which to prepare for trial" and citing *People v. Maddox*, 67 Cal. 2d 647, 653-54 (1967) and *People v. Wilkins*, 225 Cal. App. 3d 229, 308-09 (1990)); *but see People v. Jenkins*, 22 Cal. 4th 900, 1037-38 (2000) (upon which the Court of Appeal relies in this case).

the record or conduct an evidentiary hearing.  (Traverse at ¶10.)  Other than this general statement, the only issues the Court can identify from the Traverse for purposes of an evidentiary hearing are whether the trial court considered § 1049 in denying Petitioner's requests for continuances, whether Petitioner had a list of potential witnesses, and when Petitioner received his pro per privileges.  (Traverse at 4-5.)

AEDPA prescribes the manner in which federal habeas courts must approach the factual record and "substantially restricts the district court's discretion to grant an evidentiary hearing."  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir.1999).  "[A] determination of a factual issue made by a State court shall be presumed to be correct," with the petitioner having "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Section 2254(e)(2) limits "the discretion of federal habeas courts to take new evidence in an evidentiary hearing."  *Cullen*, 563 U.S. at 185.  "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the applicant shows that the claim relies on a new rule of constitutional law "made retroactive on collateral review by the Supreme Court, that was previously unavailable," or "a factual predicated that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A).  In the latter circumstance, the petitioner must also demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).  Moreover, "[b]ecause a federal court may not independently review the merits of a state court decision without first applying the AEDPA standards, "a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts." *Earp v. Ornoski*, 431 F.3d 1158, 1166–67 (9th Cir.2005) (citing *Lockyer*, 538 U.S. at 71); *see Schriro v. Landrigan*, 550 U.S. 465, 474 ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court

must take into account those standards in deciding whether an evidentiary hearing is appropriate"). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen*, 563 U.S. at 185("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review"). If a claim subject to 28 U.S.C. § 2254(d)(1) does not satisfy that statutory requirement, it is "unnecessary to reach the question whether § 2254(e)(2) would permit a [federal] hearing on th[at] claim." *Id.* at 184 (citation omitted). "In practical effect, . . . this means that when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen*, 563 U.S. at 183. (citation omitted). Since *Cullen*, the Ninth Circuit has held that a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2). *See Stokley v. Ryan*, 659 F.3d 802, 808 (9th Cir.2011).

As explained above, Petitioner is not entitled to relief under § 2254(d). And, as noted above, Petitioner's challenge as to the trial court's consideration of or compliance with § 1049, is a state law issue for which federal habeas relief is unavailable. Additionally, the Court of Appeal and the trial court both considered Petitioner's claims concerning potential witnesses, including when he received paperwork to obtain an investigator and his diligence in pursing witnesses. (Lodgment 5 at 13; Lodgment 2, Vol. 3 at 65.) Petitioner does not satisfy any of the exacting prerequisites to an evidentiary hearing on federal habeas review.

Accordingly, the Court recommends Petitioner's request for an evidentiary hearing be **DENIED**.

## V.   <u>CONCLUSION AND RECOMMENDATION</u>

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying the Petition.

1    **IT IS ORDERED** that no later than **February 23, 2016,** any party to this action

2    may file written objections with the Court and serve a copy on all parties.  The document

3    should be captioned "Objections to Report and Recommendation."

4    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

5    the Court and served on all parties no later than **March 2, 2017.**

6    The parties are advised that failure to file objections within the specified time may

7    waive the right to raise those objections on appeal of the Court's order.  *Turner v.*

8    *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th

9    Cir. 1991).

11    Dated:  February 2, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge

25

15cv1836 CAB (BGS)